Good morning CASA Polaris fellow defenders. I represent Mr. Olave Valencia, but I am speaking on behalf of all appellants this morning. Your Honor, I would like to direct the Court's attention to an argument raised in the appellant's brief regarding the jury instructions in this case. We know that from United States v. Polazza, a recent Court decision by this Court, that the jury is required to decide the issue of statelessness, and that must be proven beyond a reasonable doubt and unanimously according to the Sixth Amendment of the Constitution. Here the jury indicated its confusion on its duty to be unanimous as to the issue of statelessness. The Court did not instruct them that, yes, it had to be unanimous on how the vessel of the vessel was stateless to reach a verdict on a non-unanimous finding. Specifically, the instruction that was given in this case was that the jury had to be unanimous that there was jurisdiction over the vessel because the vessel was stateless. The statute specifically lists two different ways that a vessel can be deemed stateless. First, that there is no master or captain in charge that claimed nationality. Or second, whether the stated country affirmatively asserts jurisdiction over that vessel. The first instruction that was given by the district court was the correct instruction. Not only did the jury have to find that the vessel was stateless and, therefore, subject to the jurisdiction of the United States, but that the jury had to be unanimous on how the vessel was deemed stateless. How do we deal with that? I think the Supreme Court has sort of said, well, if some finding is of an element, then the jury has to be unanimous on that element. But if that element may consist of a series of things, it's okay for the jury to get unanimous on that element by different routes. They don't all have to agree on it. You Honor, I do agree that there are some certain line of cases that might discuss that. However, I think that we are not in that area. In fact, I think that this Court is – should follow the line of cases, starting with the Supreme Court case of Richardson. Richardson talks about several ways that the defendant in that case could have been guilty of the SCCE violations. And in that case, the Richardson court reversed, saying that there had to be unanimous finding. And I think that the Ninth Circuit has followed the line of Richardson cases and should be followed by this Court. Specifically, the cases that the Ninth Circuit has ruled on that seem directly on point with this case is Echeverry, Garcia-Rivera, and United States v. Paisano. Paisano was discussed in a case that the government cited was the Jeffries case. Jeffries case talks about the Paisano case. And so I think with Richardson, Echeverry, Garcia, and Paisano, it discusses not only that a specific element has to be found unanimously, but also the ways of which that element is met, listed by the statute, has to be unanimous as well. For example, in United States v. Echeverry, it discussed the importance of a specific unanimity instruction regarding the existence of a conspiracy. And that Court said, well, that there had to be a unanimous finding and an instruction given to the jury stating that it had to be unanimous as to its specific time period for the conspiracy. And the Court stated, as long as there seems to be – well, generally, a general unanimity instruction suffices. When there appears to be jury confusion, a specific instruction must be given as to the specific unanimity requirement. And that's what we have in this case. It's clear that the jury in this case was confused and seeks guidance by its specific question. Do we have to be unanimous on either one or two, meaning the captain of the vessel claimed asserted nationality or whether Columbia unequivocally asserted jurisdiction, or can it be either or? So clearly, I think we fall into the line of cases such as Echeverry, Garcia, and Hickman, where we do have that requisite need of jury confusion, and that's clear in this case. And it also shows that there was a split. Well, it's – I mean, there's a clear instruction given. The only question is whether it was right or wrong. I mean, it's true if the jury shows some confusion, then the judge has to instruct on what unanimity is required, and he did that. He's either right or wrong, and you're saying he's wrong. That's correct. And I think that's exactly the issue that we're presented with in this case. And I think that, first of all, under – well, first, we turn to the Echeverry case where actually no corrective instruction was given, but then even more importantly, we can turn to the Garcia-Rivera case where in that case the jury sent out a note and the court tried to correct and give guidance to the jury. But in that case, the instruction that was given by the court in order to give the jury guidance was – it was related to a gun charge, a 922-G1 gun charge. And the instruction that the jury – or the court tried to give the jury in that case was the possession of when the gun was possessed, either A, B, or C. And what this Court held was the fatal flaw in that case was that the jury was required to be unanimous on either A, B, or C, and the fatal flaw was that the district court said it could be any of the one possibilities. And so I think that's directly on point with this case where a jury sent out a question stating we're confused, and the fatal flaw here was that the district court didn't say, yes, you must be unanimous, refer back to jury instruction number 21. Because that's – instead, the district court said, no, I've made a mistake, I'm switching it, now you don't have to be unanimous on either, you just have to find that it was subject to the jurisdiction. I don't really see any distinction between the Ninth Circuit decision in Garcia-Rivera and what happened in this case. I think that the fatal flaw was that this Court switched and said it could be either one or two. The district court sort of said on this particular split, it really isn't particularly prejudicial. If half the jurors think that, well, there really was no claim of registry, and the other half think there was a claim of registry that wasn't verified by Columbia, there's really no unfairness in convicting on that. Well, I think that's where the Court was just wrong, because, in fact, that shows that the jury was not unanimous, and what Garcia-Rivera stated, along with other several cases, is that this Court is not allowed to look into what the jury could have been at or what they should have decided, just whether there was jury confusion and whether it appeared that they were not unanimous at the time. That's the relevant inquiry that must be made, and I think that that's apparent in this case. Well, I think we'd have to assume they're not unanimous for purposes of analysis. They were not. Well, they may have been unanimous on statelessness, but they weren't unanimous on which way you get there. Correct. Because they asked it, and then the judge instructed, and without knowing what they did, I guess we'd have to say for purposes of analysis.  And I think that that's actually the quality of instruction. I'm sorry. It's echeverry with the Court that said that we are not free to hypothesize whether the jury did agree to and was clear on the duration of a single conspiracy. And so I think that that's what we are faced with as well, just that they were split based on the question, and that that's the inquiry to be made. And I think that that's clear in this case. Again, we can also look to the Paisano case, which discusses echeverry and Richardson as well. And I believe that the Paisano case is also on fact, because that case also discussed a similar situation where there was a specific finding and different ways of whether that jury — different ways whether the jury could have been unanimous as to that specific element. And again, the Paisano case said, no, there had to be a unanimous finding, and then the Court should have instructed that way. As long as there is an indication of jury confusion, then the instruction should have been as to protect a defendant's right to be unanimous, and they should have been instructed so. And again, the Paisano case reiterated that — the echeverry standard, which is that we're not allowed to second-guess where the jury was at, but just whether there was jury confusion at all. I realize we're not supposed to speculate, but wouldn't the jury have to be unanimous on the fact that the claim had not been supported by the country? In other words, if there's no claim made, it's a subset of that, isn't it? No, and specifically listed separately within the statute, two separate ways. Right. And so I don't believe that it's a subset of one or the other. And, I mean, clearly they didn't find it to be a subset because they were split as well. And so I think that that's the question that you're asking me. And so I don't believe that it is a subset because it is separately listed within the statute. And additionally, that they were split on it. And so they couldn't have found unanimously on one and therefore moved on to the other because they were indicating that they were split on that decision. Well, let me put it another way. Let's, if there's no claim made, the country would not unequivocally assert that it was properly registered, right? If there was no claim made. Yeah. Unless the Coast Guard had some other information to go ahead and contact that country, then they would do so. So there might be some situations where the Coast Guard might find other evidence and contact that country to decide whether there was an unequivocal assertion of jurisdiction. Right. And so there could be that situation. And so because they're specifically listed separately under the statute, I believe that there could be some circumstances where they would end up contacting a country without a claim of nationality. But that's really not the case here. It didn't happen here. Right. We had a claim of nationality in this case. And we had information being sent to Columbia, which we disputed. So I don't believe that we're in that situation that the Court is considering. Your Honors, unless we have any further questions, I would like to reserve the rest of the time. Mr. Kernow, you can proceed. Thank you. Yes. I'm David Kernow from the United States. I'd just like to start off with making a big distinction on the Garcia-Rivera line of cases, why they don't really apply here. First of all, as I recall in Garcia-Rivera, this Court found that the jury instruction was fatally ambiguous. That's clearly not the case here, number one. Number two is that that line of cases goes off on the assumption that we're talking about an element that needs to be — needs to be — have an instruction on. This is not an element. Perlazza — if Perlazza did not make that clear, then certainly Zakharov did, that this is not an element. This is something — this is a quasi-element, but it is not an element. And so, therefore, it falls into the — the line of reasoning as in — as in Richardson, and more particularly in Shadd v. Arizona, where you say that if you have these brute facts, underlying facts, that need to go into the finding, that they do not necessarily need to be — they don't have to be unanimous. Now, the jury in this case found unanimously that it was a stateless vessel. And they — and then the defense did not ask any — any questions on the — on the issue that they now bring up, well, where did you find — how did you find that? Did you find it because a person in charge made the claim or because Columbia refuted it? Nobody asked that, and that issue was never — The jury asked it. Pardon me. The jury asked it. But when the jury was polled and the — and the defense was asked, do you have any other questions, or is there anything else, they said no. Well, let's — let's presume they — let's presume they were split evenly on that question. Right. What — how does that affect your analysis? It doesn't make any difference. If they had been polled and they said, you know, half of us went with number one, half of us went with number two. Under the Richardson line of cases, it doesn't make any difference because it's a — it's simply a brute fact or it's an underlying fact by which you get to the issue of statelessness. And that's the situation we have here, is it was a — simply a situation where either one of the — either one of the facts, that is, a claim by a person of interest or not being an equivocal or being an unequivocal assertion by Columbia, either one of those would lead to the statelessness. Garcia-Rivera is a troubling case for you, I think. I mean, you could say — arguably, in that case, you could say that the Court was dealing with elements and not — or facts and not elements. But that's — you could say that, except that the case doesn't say that. Case uses the term element, as do all the other cases at the defense sites. Do you really think they were — when you look at the facts of the case, though, they were really — were talking about elements and not facts? I mean, I — Well, I'm not going to — I'm not going to parse the case. You may have three different times. And I'm not going to go behind the case. I just know what the case says. And all the other cases that, again, that the defense sites deal with elements. And we're not dealing with that here. It's very clear it's not an element. And not only that, but as we also argue, that with regard to the — whether it was a person of — in charge, there was a factual finding by the Court that no one was in charge, that Bonilla-Torres was not the person in charge. And also, there is a finding that even if more information had been supplied to Columbia, it wouldn't have made any difference that the Columbians' statement would have still been the same, that is, that it was not a vessel. They couldn't determine one way or the other if it was a vessel. So, once again, if you — if you go down to our secondary arguments, all of this is harmless error, because the facts are very clear that those factual, brute facts, if you will, were established without any kind of — without any kind of refutation by the defense. Are there any cases where a court has said the jury has to be unanimous on an element, but how they get to that unanimity is of no concern? In other words, if there are sub-facts or sub-categories or something, it doesn't matter that they all follow the same route as long as they're unanimous on the element. I believe that the Shad v. Arizona tells you that. Shad does that. Because all that Richardson really does is it just states the proposition that Shad v. Arizona stands for, that you can have these underlying facts that will eventually lead you to a unanimous verdict on an element. And the element here is whether or not it's a stateless vessel. And they were unanimous on that particular issue. I didn't put my question very artfully, but do you view the two elements, or the two — number one and number two — as mutually exclusive or not? I mean, one, there's no claim, and second, there's a claim made, but the country does not affirmatively and unequivocally make a response that it's registered. Well, obviously, if there's no claim, no country is contacted. It's a stateless vessel. Yes. But there's no question about that. I mean, I guess that was my question, is if you're split evenly, even on that question, it still means that you probably meet the second prong, right? Second prong? The second alternative, because obviously the country would not have unequivocally asserted jurisdiction. Oh, sure. If there was no claim, they wouldn't be in a position to do anything. Right. And they probably wouldn't even be contacted, as a matter of fact. But remember, also, on the first — on the first of the two propositions that were given to the jury, it has to be — the claim has to be a claim by a person in charge or the master. And as we — as I say, the evidence here was that there was no master. Nobody claimed to be the master or the captain. And nobody was treated — Coast Guard didn't treat anyone as a person in charge, and neither did the district court. And finally, there was — there was just no evidence to the contrary that Columbia would have done anything differently if more information had been submitted. And if you look at the information that the defense wanted to be submitted, it still wouldn't have resulted in Columbia changing its mind, because just because there are people on board who are from Columbia doesn't mean that the ship is from Columbia or the port of calls was Columbia. It doesn't mean it's a Colombian vessel. If you look at Zakharoff, just because the crew there was Russian doesn't mean it was a Russian ship. In fact, it was flagged in Belize, and it was found off the western coast of Mexico. So just because the crew says that they're from a particular location doesn't mean anything at all to the Colombian Navy. They want to know where the boat is from, and there was nothing on board the boat, either by way of registration numbers or flags or documentation, to substantiate the claim that, in fact, it was from Columbia. Roberts. Any further questions? All right. Rebuttal. Thank you. Your Honor, first, the government brings up the Zakharoff case. And that case is interesting because, in that case, it's totally distinguishable because the appellants in that case conceded the statutory jurisdiction element. They didn't dispute that the Belizean government consented to the search. And so, really, the focus of that case was the constitutional argument or the constitutional jurisdiction over that vessel. In fact, one of the appellant's counsels is here and said, that's right, we didn't attack the statutory jurisdiction. So, really, the Zakharoff case doesn't apply. And, really, Pralaza states, you know, call it what you want, but it has to go to the jury. And so the government here tries to say, well, if it, you know, that there wasn't any contested facts, and so it shouldn't have. Really, the whole case was contested. There wasn't a point where we were not contesting jurisdiction in this case. And the government now brings up a point, well, there's no evidence to the contrary, you know, next port of call, first port of call. But there was evidence of someone standing on behalf of the group stating Colombian nationality. The next first port of call was Buenaventura, Colombia. Next port of call, Buenaventura, Colombia. And that information was not placed onto the information that was sent to Colombians. So I really do believe that there was enough disputed facts, even if the Court thinks that Zakharoff somehow applies, that, of course, it should have gone to the jury. And What about the point, the distinction between saying we're from Colombia or saying this ship is of Colombian registry? It was interesting because the Coast Guard official that asked these questions, we attacked that line of questioning because he couldn't speak Spanish. And so basically, he went up to the vessel with a pre-printed four-question lines of question that he was only able to say. The only thing he knew how to say is, who is the captain? He didn't know how to ask, is anyone in charge? Who's the master? And so the questioning that was actually given to the individuals on board was so limited that what was eventually responded is, what's your nationality? And that's when we had an individual stand up and say, Colombian, what's this boat's next port of call and first port of call? Buenaventura, Colombia. And so there was sufficient information to send Colombia. And in fact, they did send it to Colombia. It's not as though the Coast Guard didn't treat it as enough because they did take that second step. And so I do think that there was enough disputed information to completely follow the Peralaza decision and send it to the jury, which it did go to the jury. So really, the ultimate issue was then what was given to the jury. Was it enough? And that's where we get to the unanimity requirement. And I know that the Court, Your Honors, keep bringing up this distinction between the ways to which we reach that element. And my first argument is that, of course, it's listed within the statute specifically. And so that kind of takes us out of this means-type argument. But it's also worth to note that the district court considered the distinction between this statute and a means-type argument and rejected the means argument. On the — when the Court decided to give the first instruction, it was on May 20th during the jury instruction conference. The Court considered whether this was a means-type situation and rejected it, saying, no, that it was entirely different. Kennedy, I'm sorry, but the Court said later. It's true. I mean, it's true, but — and I think that that was also incorrect. But also, there's no discussion within Garcia or Richardson or Paisano, the difference between means and — and brute facts. In fact, Richardson says brute facts, but this case isn't brute facts. And as Your Honor noted, that's not even listed in the statute, and Richardson still came to that conclusion, that it's not brute facts and that's not what we're dealing with. And the government cites to the Chad decision. But really, with that case, Richardson is more on point than the Chad — the Shad case, because the Shad case really dealt with whether the State court, whether they were going to reevaluate what the State court considered was means or whether it was actually something that should go to the jury. And so the Richardson case was faced squarely with how they were going to treat it. And I think that that's what we must follow in this case, was whether this district court should have said it should be unanimous. And so I think that the Richardson-type cases are actually more on point. In this case, the government says, well, the government — or the defense attorneys didn't ask to poll the jury. Well, I'm not sure any other way that we could ask the court to — to state to the jury that you have to be unanimous. There was discussions on whether there should be special interrogatories as to that question. And then we got the instruction that said you have to be unanimous as to A or B. And, in fact, really, we don't need to have the jury polled, because they sent a question out saying, of course, they must have been split. Yes. Well, absent a specific jury form that asked the question, it would be tough to poll the jurors on how they reached a particular verdict. Right. And we — there was discussions of requests for specific special interrogatories. And so — and that was rejected. After many, many days of discussion on what ultimate jury instruction was going to be given, with requests for special — or special interrogatories, which was rejected, we ended up with the first instruction. And so — and so in every possible way that we could have asked for the jury to specifically state its grounds, the defense did so. And so — and so I don't think that there's any reason to consider that as any failure on the part of the appellants in this case, considering at every stage we objected and asked that it be unanimous. And, therefore, Your Honor, I think that the case does basically boil down to the ultimate instruction that was given and whether that should have been a unanimous finding. And I — and I don't see any distinction between the Richardson case and those line-of-cases in the Ninth Circuit that — that don't even discuss anything but whether there was a harmless error under those circumstances. It had to be unanimous, or a unanimous instruction had to be given in that circumstance. And as long as there is jury confusion and — and a court considers that it must have been unanimous, then — then the court was — was required to do so. Go ahead. No. Is it appropriate to have a harmless error analysis in a case like this? No, Your Honor. I don't believe so. From your standpoint? The — the Ninth Circuit cases, none of the cases that discuss this line of — line of evidence have a harmless error. They simply state that the appropriate — the appropriate inquiry to be made is whether there was jury confusion. They can't speculate on it as to how they must have been split or where the evidence lies on that. They simply follow those standards and then say, if we find that it should have been unanimous and there was jury confusion and it was not properly clarified, reversal is required. And specifically, even under Garcia-Rivera, there was a discussion whether there was an objection, and the court had to decide whether to apply an abusive discretion or plain error. And the court stated, even under plain error, we don't think that we need to reach that issue today. However, even under plain error, we would reverse. And so I think that with the line of cases that we see from the Ninth Circuit, that a — a harmless error analysis would not be appropriate in this case, nor even if we were under that situation do I think that this error would be harmless, because we do have a situation where the jury was, in fact, split. And we do have a situation — In one sense, it's harmless. As Judge Thomas says, there's — there's no dispute about the fact that Columbia — well, I shouldn't — I guess you have your dispute about whether they had enough information, but there's no question that Columbia did not claim this yet. We disputed every which way we could to Columbia's response. We first moved in limine to — to exclude the actual document. We didn't have live testimony. We disputed the information that was actually given to Columbia, that the Coast Guard basically purposely circumvented any meaningful determination from Columbia. And what we know is that the jury must have believed that argument to some extent because they were split on that. And so even under — although I don't think we even need to reach a harmless error analysis, even — even under that, there was enough disputed information that — that was harm. And because we disputed — you know, and what was interesting is that the Columbian response back was, we don't have enough information at this time. Send us more. And so we — we said, A, not enough information was given to them, because, of course, if they would have had each individual's valid passports from Columbia and valid city identification — Where in the — where in the record did they say, send us more information? On the government's — it's on the appendix, the government's Exhibit 63, and it's Appendix 5 of the government's brief. On that form, and it's — and it's actually translated within the trial, the Spanish portion, it's under — and it's Agent McClay's testimony where it's actually translated. I can't pinpoint due to the translation, but this document is what's the response from Columbia, where it's stating on the first page, can neither — can be confirmed at this time. But on the second page, under number — under letter E, it states, we — we solicit any further information once the boarding is completed. And that information wasn't sent to Columbia until days later, after the board was — after the boat was destroyed. Everything was collected. The defendants had been arrested. I mean, that's — the issue of the statelessness and so on is whether they can board. And that Columbia sends back and says, send us further information when you finish boarding, it may speak to a different question. We argued that it, in fact, went to whether they're deciding whether they're going to assert jurisdiction or not, which goes down to there were several ways that we disputed that second prong of the statute. So when the court asks, wasn't it overwhelming that this fact was true? No. There was every which possible way that we could have tried to dispute it, we did. My question was more, and I can't apologize because I didn't put a very hard foot, but if it's undisputed that at least some jurors found that number two was not met, that there was no claim of jurisdiction, does it make any difference if some of them said that no claim was made in the first instance? I'm sorry, if what? I mean, assuming that some jurors felt that, in fact, the second alternative had been proven, that Columbia had not made an assertion of jurisdiction, does it make any difference that other jurors thought there had been no claim made in the first instance? Because obviously, there would be no claim of jurisdiction if no claim had been made anyway. I understand the court's concern on that. All I can say is that it's specifically enumerated separately in the statute, and really the court, the government saying, well, no, no, no, there has to be a claim of nationality by the master in charge before we even reach the second step, which so it seems to be a subset, but no. In fact, in this case, we can look at the record, and the government's whole standpoint was, no, there was never a claim of nationality. Therefore, we went along with the second stage. So there is situations where Columbia would have enough information where they would contact Columbia. In fact, they admitted it in this case. The government's position was always there was no master in charge, yet they still contacted Columbia. So there must be a differentiation between the two, and one is not subset of the other, or it seems to be that there wouldn't be a need to have them separated, which the statute specifically lists them separately. And the government's own case states, well, Agent McClay stated there was, in one instance, there was no claim of nationality, but we contacted Columbia. And so that can't be the case if there was no person in charge. The government's, if we were to believe that the government's position that there was no master in charge, they did contact Columbia. But it's our position that, of course, there was. I mean, a Coast Guard officer looks at this and says, I don't think there's been any claim of registry here. But, you know, you can't be too careful. I don't think we have to do this, but I'm going to go ahead and ask Columbia anyway. And we probably would honor it if Columbia came back and said, this is our ship. Correct. And I guess the point is, is that this inquiry, this exact discussion, is exactly what Garcia-Rivera says is what the jury must decide. And that the only thing we are to inquire is whether that confusion existed. And so- Why do you think they were, why do you think the jury was confused based on your examination of this record and your knowledge of the case? I believe that they were, well, that they were split because some jurors must have believed that Columbia was, I mean, there's only two possible scenarios. Some jurors either believed or didn't believe that there was a master in charge, because that's the government's position and that was the exact opposite of ours. And so there must have been some jurors that believed one way or another and were split on that decision, or they all would have come to that side if they could have, okay, let's all agree at least that there was no person in charge. That would have been easy for them. The other dispute was there were some jurors that must have believed that, Columbia was entitled to every passport and every identification because of course they would have served a jurisdiction. And so we're stuck over here. So there must have been some jurors that fell on either side of either argument that the government and the appellants were submitting to the jury at that time. And so I think as to each separate issue, there must have been a split as to both of them, as to whatever side the government or the appellant was disputing. And at every stage, the appellants stated that, A, Mr. Bonilla was in charge because of his show of authority, and B, the government treated him as such. And then as to the second issue, the government or the Colombians were totally circumvented for making any reasonable determination as to its jurisdiction. Or as to its, yeah, as to its jurisdiction because the Coast Guard offers didn't give them anything meaningful to consider. And so I believe that the jurors must have been split as to those issues, or we wouldn't have the jury question that was submitted. So, thank you, Your Honors. Yeah, thank you very much for your argument. And we know that there are other important issues raised in this case. And the fact that you didn't discuss them today, of course, does not mean you're waiving it one bit and we'll consider them seriously. But I appreciate you focusing on an important aspect of the case. Thank you, Your Honors. The case will be submitted and we'll be at recess. All rise. This court, in this session, stands adjourned. Thank you.    Thank you. Thank you.
judges: Canby, Thomas, Conlon